GALVESTON, HOUSTON & NORTHERN RAILWAY COMPANY v. OCTAVIA E. WALLIS ET AL.

Decided June 24, 1907.

**1.—Railroads—Defective Track—Negligence.**

In an action for damages for the death of a brakeman who was caused to fall from a freight train by the lurching of the same over a defective track, evidence considered, and held sufficient to support a finding that the defendant company was negligent in permitting its track to be and remain in such condition.

**2.—Excessive Verdict—New Trial.**

It does not necessarily follow that a defendant is entitled to a new trial when the verdict of the jury is so excessive as to indicate that it was influenced by some improper motive in fixing the amount of the same. The error may be cured by a proper remittitur.

Appeal from the District Court of Harris County. Tried below before Hon. W. P. Hamblen.

*Baker, Botts, Parker & Garwood* and *Lane, Jackson, Kelley & Wolters,* for appellant.—A brakeman, who, in the performance of his

duties, as such, while walking over the tops of cars in a moving freight train, is caused to slip and fall, by reason of the ordinary and usual movements of the cars, or by reason of stepping from one car to another and higher car, or by reason of the existence of frost or ice on the roof of the cars, due to weather conditions, all of which are open to his observation, will be deemed, in law, to have assumed the risk of such accident and injury, and the employer is not liable therefor.   Galveston, H. & S. A. Ry. Co. v. Lempe, 59 Texas, 22; Missouri Pac. Ry. Co. v. Somers, 71 Texas, 702; Green v. Cross, 79 Texas, 131; Texas & Pac. Ry. Co. v. French, 86 Texas, 98; Texas & Pac. Ry. Co. v. Bradford, 66 Texas, 736; Gulf, C. & S. F. Ry. Co. v. Williams, 72 Texas, 164; Missouri Pac. Ry. Co. v. Watts, 63 Texas, 549.

The court erred in refusing to grant a new trial, because the verdict of the jury is excessive in amount, and is not authorized or justified by any evidence adduced upon the trial of this case, and conclusively shows that the jury was influenced, not by the law and facts, but by their unwarranted sympathy for the widow and children of the deceased, the plaintiffs in this case, and said verdict can not be sustained by any testimony admitted in this case.   The verdict of the jury shows that the jury, in assessing the damages and awarding a verdict, did not take into consideration the law of the case, as given by the court, but arbitrarily, and without reason or evidence, and in violation of the law, assessed an unconscionable and unwarranted verdict against the defendants.   Rev. Stats., art. 3027; Southern Cotton Press Company v. Bradley, 52 Texas, 587; Houston & T. C. Ry. Co. v. Cowser, 57 Texas, 293; International & G. N. Ry Co. v. Kindred, 57 Texas, 491.

An employe who enters the service of an employer, to perform a given line of work, is presumed to undertake such work according to the usual and established methods and means of the employer, and to so understand; and in the event of injury received as the result of performing work according to such methods and means, he will be held, in law, to have assumed the risk and danger of such injury as an incident to the contract of service, and can not recover therefor.   Missouri Pac. Ry. Co. v. Watts, 63 Texas, 552; Missouri Pac. Ry. Co. v. Somers, 71 Texas, 702; Texas & Pac. Ry. Co. v. French, 86 Texas, 98; Texas & Pac. Ry. Co. v. Bradford, 66 Texas, 736; Galveston, H. & S. A. Ry. Co. v. Lempe, 59 Texas, 22.

*Lovejoy & Parker,* for appellee.

PLEASANTS, ASSOCIATE JUSTICE.—This is a suit by the widow and children of W. R. Wallis, deceased, against the appellant to recover damages for the loss sustained by them by reason of the death of said W. R. Wallis, which it is alleged was caused by the negligence of the defendant.

At the time he was killed the deceased was in the service of appellant as head brakeman on one of its freight trains.   The train by which he was killed had been made up in the yard of appellant at Houston, and was just leaving said yard to go to Galveston.   Just

after the train started the deceased got on top of the ninth car from the engine and proceeded along on the tops of the cars toward the front of the train. He passed over the ninth, eighth and seventh cars, and as he was stepping from the seventh to the sixth car he lost his footing and fell between the cars and was run over and killed. His body was dragged about two car lengths, and when it was taken from under the train life was extinct. The petition alleges that deceased was caused to fall by the sudden lurching of the cars which was due to a defective track.

The defendant answered by general demurrer and general denial, and pleas of contributory negligence and assumed risk.

It was dark at the time of the accident. The morning was cool and the tops of the cars were covered with frost. Appellant pleaded these facts and averred that these conditions which were known to the deceased were wholly responsible for the accident and that the same was in no way contributed to by any negligence on its part, but was the result of a risk ordinarily incident to the employment and which was assumed by deceased when he entered appellant's service.

A trial by jury in the court below resulted in a verdict and judgment in favor of appellees for $19,200. On motion for new trial the trial judge refused to allow the judgment to stand unless plaintiffs would file a remittitur in the sum of $7,200. The remittitur was filed and the judgment being thereby reduced to $12,000, the motion for new trial was overruled.

The evidence shows that the deceased fell from the cars just as they were passing over a place in the track where there was a spliced rail, or "dutchman" as it is called in the vernacular of railroad employees. This splice was eight or ten inches long and was put in to fill a space between the ends of two rails which did not come together. The piece of rail used for the splice was bolted to the end of one rail but was not bolted to the other. Several witnesses who examined this "dutchman" testified that its condition was such that a car passing over it would sink four or five inches. The filling under the tie upon which this splice rested had been worked or washed out and this also caused the track on that side to sink. This defective track and rail was on the north side, which was the side from which the deceased fell. There was no defect in the rail or track on the south side. The effect of the defective rail and track was to cause the cars passing over it to lurch down and out and it is a reasonable inference from the testimony that this motion of the car caused the deceased to lose his footing and fall between the cars. The track had been in this condition for some time and the finding of the jury that the appellant was guilty of negligence in permitting it to remain in such condition and that this negligence was the proximate cause of the death of the deceased is sustained by the evidence.

The deceased had been in the service of the company as a brakeman on this train for about a year, but had not been continuously so employed. This train had passed over this track often during

the time deceased was a brakeman thereon, but it is not shown by the evidence that deceased actually knew of the defective track, and there is testimony to the effect that he usually got upon the train at a point east of the defective portion of the track and there is no direct evidence that he had ever been on the top of a car while it was passing over this "dutchman."

The first and second assignments complain of the action of the trial court in refusing to instruct a verdict for defendant and in not granting a new trial on the ground that the undisputed evidence shows that the death of the deceased was the result of an unavoidable accident and was not caused or contributed to by any negligence on the part of the defendant, but resulted solely from an ordinary risk of the service which was assumed by him.

Neither of these assignments can be sustained. As we have before stated, we think the evidence supports the finding of the jury that the death of the deceased was caused by the defective condition of the track and that appellant was guilty of negligence in permitting the track to be and remain in that condition. The issue of assumed risk was submitted to the jury under proper instructions and the evidence is also sufficient to sustain the verdict upon that issue.

The third assignment and the proposition thereunder are as follows:

"The court erred in refusing to grant a new trial, because the verdict of the jury is excessive in amount, and is not authorized or justified by any evidence adduced upon the trial of this case, and conclusively shows that the jury was influenced, not by the law and facts, but by their unwarranted sympathy for the widow and children of the deceased, the plaintiffs in this case, and said verdict cannot be sustained by any testimony admitted in this case. The verdict of the jury shows that the jury, in assessing the damages and awarding a verdict, did not take into consideration the law of the case, as given by the court, but arbitrarily, and without reason or evidence, and in violation of the law, assessed an unconscionable and unwarranted verdict against the defendants."

"A verdict in case of injury resulting in death, for a sum greater than the actual pecuniary injury caused by the act complained of, according to the evidence of pecuniary aid the plaintiffs would probably have derived from deceased, is deemed in law excessive, and when it is apparent from the large amount of such verdict that the jury were probably influenced by prejudice, passion or undue sympathy, such verdict is fatally defective, and should be set aside."

We understand the contention of appellant under this assignment to be that because the verdict of the jury was so excessive as to indicate that it was the result of some improper motive it should be set aside and a new trial granted, notwithstanding the remittitur filed by appellees may have reduced the judgment to a reasonable amount. There is force in the contention that where the evidence is conflicting upon the issue of liability, and the verdict against the defendant is so unreasonably large as to show

passion or prejudice on the part of the jury that the right of a defendant to a trial by a fair and impartial jury is denied when he is forced to accept upon the issue of liability the verdict of a jury that has shown, by the unreasonable amount of the damages assessed, that it has been influenced by prejudice, sympathy or some other improper motive. The point, however, was expressly decided by this court against appellant's contention in the case of Gulf, C. & S. F. Ry. Co. v. Darby (4 Texas Ct. Rep., 359), and, by the refusal of a writ of error, that decision was approved by the Supreme Court.

We do not think that the verdict for $12,000, the amount to which the original verdict was reduced by the remittitur required by the trial court, can be regarded as so excessive as to authorize us to require a further remittitur.

The fourth, fifth, sixth and seventh assignments complain of the refusal of the trial court to give special instructions requested by appellant submitting the issues of contributory negligence, assumed risk and unavoidable accident. All of these issues were fully and correctly submitted to the jury in the main charge and special charges given at appellant's request, and the trial court did not err in refusing any of the charges mentioned in these assignments. To have given these instructions would have unduly emphasized the issues thereby submitted, and subjected the charge to the criticism of being upon the weight of the evidence.

This disposes of all of the questions presented by the record, and it follows from the conclusions above expressed that the judgment of the court below should be affirmed.

*Affirmed.*

Writ of error refused.